United States District Court
Southern District of Texas

**ENTERED**

July 19, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN CARLOS BAUTISTA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-cv-61 |
| | § | CRIM. ACTION NO. 1:17-174-1 |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On April 23, 2020, Petitioner Juan Carlos Bautista filed a motion to vacate, set aside or correct his sentence pursuant to 42 U.S.C. § 2255. Dkt. No. 1.

On April 14, 2022 – after a delay due to the COVID-19 pandemic – the Court held an evidentiary hearing on the petition. Dkt. No. 77. Bautista and the Government have filed post-hearing briefs. Dkt. Nos. 84, 87.

After reviewing and the relevant case law, the Court recommends that the petition be denied. Bautista's petition is substantively meritless.

## I. Background

### A. Factual Background

#### 1. Investigation

On January 19, 2017, Eduardo Hurtado, a supervisory special agent with Homeland Security Investigations, placed an ad on Craigslist as part of his duties with the Rio Grande Valley Child Exploitation Investigations Task Force. U.S. v. Bautista, Criminal No. 1:17-174-1, Dkt. No. 166, pp. 54-59 [hereinafter CR]. The ad read as follows:

> Recently divorced 35-year-old single mom with pretty teenage daughter looking for a nice, discreet, ddf[1] person for some family fun. Reply with picture to know you are real and serious.

CR Dkt. No. 166, p. 64.

---

[1] Hurtado testified that "ddf" meant "drug and disease free person." CR Dkt. No. 166, p. 64.

Bautista emailed back to say, "I am interested," noting that he was 46 years old, was drug and disease free and had a lot of stamina. CR Dkt. No. 166, p. 39.

Bautista continued to email back and forth with the investigators, who were pretending to be "Erica," the fictional mother. CR Dkt. No. 166, p. 40.  On January 23, 2017, agent Limon sent the following email to Bautista, as the fictional mother:

> if you are serious and real, then you have to be okay with my daughter being 13 years old. Her name is Lilly and she is really pretty. We can text or KIK.[2]

CR Dkt. No. 166, p. 40.

Eleven minutes later, Bautista replied:

> are you there? Do you have KIK so we can chat about it?

CR Dkt. No. 166, p. 40.

The conversations between Bautista and the agents move to KIK. CR Dkt. No. 166, p. 40.  In these chats, the age of the fictional daughter was never mentioned. Id., p. 98.  By all accounts, the January 23rd email is the only time that the daughter's age is directly referenced.

In the KIK messages, Bautista sent messages saying, "Did you get Lilly a sexy dress, Erica?  Lilly needs a good sex pounding to get that horniness out of her." Dkt. No. 43-1, p. 41.  He also sent "Erica" a message saying, "[Lilly] said she is a size 2. Does she have a nice butt to get a good doggy pounding?" Id.  Bautista also sent a picture of his penis to be shown to "Lilly," with the instruction to Erica: "Tell [Lilly] that she will be giving a BJ to that thing." Id., pp. 53-55.

At one point, the fictional mother sent Bautista a KIK message asking if he had prior experience with young females because she wanted him to be slow and respectful. CR Dkt. No. 115, p. 5.  Bautista responded:

> Yes I would be very respectful of course and go easy on her. That would not be a problem. She needs to enjoy it.

---

[2] KIK is an instant message phone app that allows users to send messages to other KIK users. U.S. v. Whisman, 2018 WL 459342, at *3 (E.D. Tex. Jan. 5, 2018), report and recommendation adopted, 2018 WL 454248 (E.D. Tex. Jan. 17, 2018).

Yes young girls yes. How do you look and what about her. How does she look? Can you describe yourself and describe her.
Think she will be ok with my size? 8 [inches] and thick.

CR Dkt. No. 115, p. 5.

On February 8, 2017, the agents arranged to have Bautista meet the fictional mother and daughter at Olive Garden in Harlingen, Texas. CR Dkt. No. 166, pp. 66-68.  Prior to arriving at the restaurant, Bautista stopped at a nearby grocery store and purchased condoms and lubricant. Id., p. 42.  Agents who were waiting at the Olive Garden watched Bautista "behaving in a suspicious manner, looking around, manipulating his cell phone and opening up the trunk to his vehicle and placing items in the vehicle, in the trunk. Again, looking around suspiciously and then walking towards the restaurant." Id., p. 74.  When approached by an agent at the restaurant, Bautista stated that he was meeting his boss for dinner. Id., p. 77.  At that point, another agent sent Bautista a series of several KIK messages and Bautista's phone gave audible notifications of a message received, confirming that he was the person with whom they had been corresponding. Id., p. 78.  At that point, Bautista was taken into custody. Id

That night, Bautista was interviewed by Special Agents Joe Marino and Joseph Baker ("the interview"). Dkt. No. 43-1.  Bautista told the agents that he went to the restaurant to pray with the mother and dissuade her from allowing her daughter to be used sexually by adult men. Id., pp. 20-27.  Bautista claimed not to remember how old Lilly was. Id., pp. 24-25.

During the interview, the following exchange occurred:

[Baker:] You said [in the chats] you had experience with younger girls.
[Bautista]: Yeah. Well, yeah. I mean, but see here's the thing, Guy. Okay? Please, let's correct that, first of all.
[Baker:] Okay.
[Bautista]: If you wanna check the background, check the background. I don't have a problem with that.
[Baker]: Mm-hm.
[Bautista]: Okay? Um…
[Baker]: So, I wanna make sure that this hasn't hap— I wanna make sure that this has never happened before.

3

[Bautista]: No, it's never happened. I can assure you that.
[Marino:] So, this is the first time that you ever tried to have sex with a 13-year-old?
[Bautista]: Absolutely.
[Marino]: Okay. Good, good. Which is good.
[Baker]: See, this is what I'm— that's all I'm trying to get to.
[Bautista]: Right. That has never [garbled]— No, and not the intention was not to get there, Guy. Despite what you see, that was not the intention. The intention in my mind was to talk to the mom. Right?

Dkt. No. 43-1, pp. 83-84.

Later in the conversation, the agents try to pin down Bautista on his intentions in showing up at the restaurant.

[Baker]: Yeah. It's clear that the mother is— is— is involved.
[Bautista]: No. No. No, [garbled]—
[Baker]: Not in having sex. It's clear that you want to have sex with the— with Lilly. That's what's clear. Is that— is that— am I being accurate or unfair?
[Bautista]: No, I don't think you're being unfair, but—
[Baker]: You don't think I'm being unfair? So that is a fair statement?
[Bautista]: Based— yes.

Dkt. No. 43-2, p. 8.

Near the end of the interview, the agents asked Bautista to confirm their understanding of the underlying facts.

[Baker]: The fact is, and I'm gonna start over again. The fact is, you had a conversation, you had texts, you— you went to HEB, you bought condoms, you bought lube, which are— was the plan, the arrangements that were made in the text in the conversations, you went to Olive Garden to meet Erica and Lilly. You bought the condoms, and you bought the lube for the pos— 'cause the possibility of you leaving there and having sex with Lilly existed. That is the truth. That is what the evidence shows.
[Bautista]: Yes, sir.
[Baker]: And is that true?
[Bautista]: That's— That's what— yes.
[Baker]: Okay, so that is true. That's all I was asking.
[Bautista]: Yeah.

Dkt. No. 43-2, pp. 35-36.

### 2. Indictment & Trial

#### a. First Guilty plea

On March 7, 2017, the grand jury indicted Bautista on one count of enticing a person that he believed to be a minor to engage in sexual activity, a violation of 18 U.S.C. § 2422(b). CR Dkt. No. 12.  Reynaldo Cisneros was appointed to represent Bautista. CR Dkt. No. 6.

On June 27, 2017, Bautista pled guilty to the sole count of the indictment. CR Dkt. No. 50.  On September 28, 2017, Cisneros moved to withdraw, citing a conflict that had arisen. CR Dkt. No. 43.  On October 4, 2017, the Court granted the motion and appointed Ricardo Adobbati as Bautista's new counsel. CR Dkt. No. 45.

#### b. Motion to Withdraw Guilty Plea

On March 12, 2018, Adobbati filed a motion to withdraw Bautista's guilty plea. CR Dkt. No. 54.  Bautista moved to withdraw the guilty plea on the grounds that "his prior attorneys never provided him with actual copies of the government's investigative reports or of his emails and text messages specifically outlining what was discussed between Defendant and the undercover agents in this matter" and that he was making a "factual claim of innocence." Id.

On June 6, 2018, the Court granted the motion to withdraw the guilty plea. CR Dkt. No. 66.  On October 30, 2018, the grand jury issued a superseding indictment, charging Bautista with (1) enticing a person that he believed to be a minor to engage in sexual activity, a violation of 18 U.S.C. § 2422(b); and (2) transfer of obscene material to a person he believed to be a minor, a violation of 18 U.S.C. § 1470. CR Dkt. No. 86.

#### c. Trial

On December 21, 2018, Bautista filed a pretrial motion in limine, seeking to prohibit the introduction of "[a]ny claims the government witness has the knowledge or expertise to testify as to the manner in which emails, texts, or any other electronic communications function or any claim emails or other evidence were received or opened by the defendant or anyone on his behalf." CR Dkt. No. 98.

On January 29, 2019, the Court issued an order regarding motions in limine. CR Dkt. No. 109.  As relevant here, no party was permitted to elicit expert testimony as to "whether Defendant viewed, opened, or read a specific communication sent by a law enforcement agent." Id.

The trial began on January 30, 2019. CR Dkt. No. 166.  Prior to the start of trial, Adobbati asked the Court for an opportunity to privately show Bautista the videotaped interview. Id., pp. 22-23.  Because of restrictions at the facility where Bautista was housed, Adobbati had not been allowed to bring any electronic devices into the facility to review the interview with his client. Id.  The Court gave Adobbati a short recess prior to the trial to watch the video with Bautista. Id., p. 25.  When Adobbati requested additional time, the Court told him that he could "continue to review the video with your client during the -- the breaks that -- that we will have," but that it was not going to keep the jury waiting any longer. Id., p. 26.

Bautista's defense centered on the idea that he was attempting to engage in sexual intercourse with a woman who he believed was 18 or 19 years old. CR Dkt. No. 166, p. 46. In his opening argument, Adobbati stated that "when you hear the evidence, you will see that it shows my client didn't know the age of this lady." Id.  Adobbati noted that there was "no proof" that Bautista ever read the email where the agent claimed that the girl was 13 years old. Id., p. 47.

After three agents testified, the Court took a break for lunch. CR Dkt. No. 166, p. 156.  Prior to the lunch recess, the Government informed the Court that it planned to show the video of the interview to the jury as part of its post-recess testimony. Id.  The jury would view the entire video, with the exception of a discussion between Bautista and the agents of a prior arrest for sexual misconduct. Id., pp. 9-12.

During this recess, Adobbati was given another opportunity to review the interview video with Bautista. CR Dkt. No. 166, p. 156.  As discussed later, the Court held an evidentiary hearing on April 14, 2022, relating to the instant petition. Dkt. No. 77.

During the April 14, 2022 evidentiary hearing, Adobbati noted that while Bautista had reviewed the transcript of the interview prior to trial, he had never seen the video until

the day of trial. Dkt. No. 77, p. 33.  Adobbati stated that Bautista's demeanor was recorded on the video:

> The video – the officer makes a statement about the fact it's a 13-year-old girl and Mr. Bautista's stoic, doesn't react at all in the video as to having heard the statement and the consequences of the fact that it's a 13-year-old girl mentioned or in his case or according to what he told me the first time ever. So on the video, he was just nonchalant about the entire thing. But when we were talking, that really affected him. He said, 'I had no idea that it looked like that on video.' His comments were basically he had no idea that he presented himself on video that way. And that's when we had the discussions about the fact that the Jury's going to see the video and they're going to have an opportunity to make their own determination as to whether Mr. Bautista did or didn't have knowledge of the fact that he was soliciting with a minor.

Dkt. No. 77, p. 33.

During the same evidentiary hearing, Bautista testified that during the break, Adobbati attempted to show him the video, but was unable to. Dkt. No. 77, p. 92.  Bautista testified that Adobbati wanted to discuss with him an "inculpatory" question that he was asked, which Adobbati allegedly told Bautista "I can't defend this – you know, the evidence that is in the video." Id., pp. 92-96.

The allegedly indefensible statement was when the agent asked Bautista if this incident was the first time he had tried to have sex with a 13 year old girl and Bautista replied, "absolutely." Id., pp. 106-07.  Bautista claimed that he was never asked that question during the interview. Id., p. 107.  Bautista stated that he decided to "enter a guilty plea based on Mr. Adobbati's representation of the contents of the interrogation video." Id., p. 102.

### d. Second Guilty Plea

After the Court returned from the lunch recess at trial, Bautista pled guilty to count one pursuant to a written plea agreement with the Government. CR Dkt. No. 166, p. 156-57.  As part of his re-arraignment, Bautista testified that he was "fully satisfied with the advice and counsel" that Adobbati provided. Id., p. 161-62.

In reviewing the factual basis for the guilty plea, the Court focused on the element of age within the indictment.

[The Court]: And, in particular, in light of the specific defense that your counsel has indicated has been the focus of your defense for purposes of the trial, I want to focus on the specific message or – or sentence on page 8 toward the end of paragraph b, which is a carry-over paragraph, indicating that the KIK messages demonstrate that "the purpose of the meeting in Harlingen was to engage in sex with Lilly, a person Defendant believed was a 13-year-old minor female on that day and that Defendant would purchase condoms and lubricants for the encounter"; is that statement true?
[Bautista]: Yes, Your Honor.
[The Court]: Are you pleading guilty because all these facts are true?
[Bautista]: Yes, Your Honor.

CR Dkt. No. 166, p. 179.

The Court accepted Bautista's plea of guilty. CR Dkt. No. 166, p. 181.

### 3. Presentence Report

In the final presentence report ("PSR"), Bautista was assessed a base offense level of 30, with no enhancements or reductions. CR Dkt. No. 115, p. 12.

Regarding his criminal history, Bautista had no adult criminal convictions and was assessed no criminal history points. CR Dkt. No. 115, p. 13.  An offense level of 30 and criminal history category of I, produced a sentencing guideline imprisonment range of 97 to 121 months.  The offense, however, carried a mandatory minimum sentence of 120 months. 18 U.S.C. § 2422(b), so the revised guideline range was 120 to 121 months imprisonment. U.S.S.G. § 5G1.1(c)(2).

### 4. Sentencing

Bautista did not object to the PSR. CR Dkt. No. 114.

On May 23, 2019, the Court held the sentencing hearing. CR Dkt. No. 165.  The Court gave Bautista a three-level reduction for acceptance of responsibility. Id., p. 3.  His revised guideline sentencing range was 70 to 87 months, but the statutory mandatory minimum sentence remained 120 months. Id., p. 3.  The Court sentenced Bautista to 120 months imprisonment, and ten years of supervised release. Id., p. 6.

### 5. Direct Appeal

The judgment was entered on June 5, 2019. CR Dkt. No. 123.  No notice of appeal was filed.  A notice of appeal must be filed within fourteen (14) days from the entry of

judgment. FED. R. APP. P. 4(b)(1)(A), 26(a)(2). Therefore, Bautista's deadline for filing a notice of direct appeal passed on June 19, 2019. Id.  His conviction became final on that date. U.S. v. Scruggs, 691 F.3d 660, 669 (5th Cir. 2012).

As previously noted, the Court held an on April 14, 2022.  At that hearing Bautista claimed that he told Adobbati after the sentence hearing that he wanted to appeal the supervised release term because it was not the statutory minimum supervised release term. Dkt. No. 77, p. 99; see 18 U.S.C. § 3583(k) (noting that the mandatory minimum supervised release term for Bautista's conviction was five years).  Bautista claimed that Adobbati responded by telling him to sign and date a paper that he was holding, but that Bautista did not make any other markings on the form. Dkt. No. 77, pp. 100-101. Specifically, Bautista stated that he did not check the box which indicated that he did not wish to appeal. Id.

Adobbati testified that Bautista did not indicate any issues with the supervised release term and did not indicate that he wished to appeal. Dkt. No. 77, pp. 38-40.  The Government introduced into evidence a document from Adobbati, where Bautista checked that he did not wish to appeal and signed his name. Dkt. No. 71.  Bautista testified that he did not make that checkmark. Dkt. No. 77, p. 101.  Adobbati testified that he did not make the checkmark, because that is not how he makes checkmarks. Id., p. 64.  The checkmark on the document goes from the lower left to the upper right. Dkt. No. 71.  Adobbati testified that because he writes left-handed, his checkmarks go from the lower right to the upper left. Dkt. No. 77, p. 64.

Adobbati further testified that if Bautista had indicated that he wished to appeal, Adobbati would "have given a notice of appeal to the Court" and that he "would have filed it with the Court and made sure it was done within 10 days." Dkt. No. 77, p. 40.

**B. Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255**

On April 23, 2020, Bautista timely filed the instant § 2255 petition, requesting that the District Court vacate, set aside, or correct his sentence. Dkt. No. 1.

Bautista's petition is somewhat confusing, but the Court understands him to be making the following claims: (1) Adobbati was ineffective for advising him to enter into a

plea agreement, thus rendering Bautista's plea unknowing; (2) Adobbati and Cisneros were both ineffective in defending his case; (3) Adobbati was ineffective for not filing a requested notice of appeal; (4) the Government withheld probative evidence from Bautista; and (5) the evidence was insufficient to support his conviction. Dkt. Nos. 1, 2.

On April 24, 2020, the Court ordered the Government to file a response. Dkt. No. 11.

On June 23, 2020, the Government filed a response, seeking a limited evidentiary hearing as to the issue of whether Adobbati filed a requested notice of appeal. Dkt. No. 15.

On June 24, 2020, the Court appointed counsel for Bautista and ordered counsel to consult with Bautista "as to whether Bautista is willing to have the evidentiary hearing via televisual means (such as Zoom) as opposed to in-person," given the COVID-19 pandemic. Dkt. No. 16.

On July 14, 2020, Bautista filed a statement that he did not wish to waive his right to an in-person evidentiary hearing. Dkt. No. 20.  On that same day, the Court noted Bautista's choice and that the Courthouse was closed due to the COVID-19 pandemic, staying the case "for as long as the courthouse is closed to the public." Dkt. No. 21.

On November 17, 2020, the Court lifted the stay and set the matter for an evidentiary hearing on March 23, 2021. Dkt. No. 23.  After a series of unopposed continuances, the Court set the matter for hearing on November 30, 2021. Dkt. Nos. 24, 25, 26, 27, 28, 29.

On November 9, 2021, Bautista filed a motion for discovery, seeking electronic records from Craigslist, KIK and Google. Dkt. No. 31.  On November 10, 2021, the Court ordered the Government to respond to the motion and postponing the hearing until after the Court ruled on the motion for discovery. Dkt. No. 32.

On January 21, 2022, the Court denied the motion for discovery. Dkt. No. 44.  On January 24, 2022, the Court reset the evidentiary hearing for April 13, 2022. Dkt. No. 46.  On April 5, 2022, the Government filed an unopposed motion to reset the hearing. Dkt. No. 68.  On April 6, 2022, the Court granted the motion and reset the evidentiary hearing for April 14, 2022. Dkt. No. 69.

On April 14, 2022, the Court held the evidentiary hearing. Dkt. No. 77.  Bautista, Albert Bautista (the defendant's brother), Cisneros, and Adobbati testified at the hearing. Id.  At the conclusion of the hearing, the Court gave both parties an opportunity to file post-hearing briefs. Dkt. Nos. 84, 87.

## II.  Applicable Law

### A. Section 2255

Bautista seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  As relevant here, that section provides:

> (a)  A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a § 2255 petitioner exhausts or waives his direct appeal, courts may presume that he was fairly convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001).  Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, absent a showing of cause and prejudice. Id.

"In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004).  To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Grammas, 376 F.3d at 436.

To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012).   Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

## III. Analysis

As previously noted, Bautista has raised several issues, which the Court restates as four issues: (1) Adobbati was ineffective for advising him to enter into a plea agreement, which made Bautista's plea unknowing; (2) both Cisneros and Adobbati were ineffective in defending his case; (3) the Government withheld probative evidence from Bautista; and (4) the evidence was insufficient to support his conviction. Dkt. Nos. 1, 2.  As discussed further below, none of these contentions are meritorious.

### A. Plea Agreement

Bautista claims that Adobbati was ineffective for advising him to enter into a plea agreement.  The Court finds that this argument is not supported by the record.

While Bautista was able to review a transcript of the interview with Adobbati, Bautista has argued that because the interview video was not discussed with him until trial had already begun, he was "pressured into making an uninformed and hast[y] decision." Dkt. No. 2, p. 7.  Bautista testified that Adobbati told him that he, Bautista, had made a statement in the interview that would be difficult to defend at trial.

Specifically, when the agent asked Bautista if this incident was the first time Bautista had tried to have sex with a 13 year old girl and Bautista replied, "absolutely." Dkt. No. 77, pp. 106-07.  Bautista claimed that he was never asked that question during the interview. Id., p. 107; Dkt. No. 2, p. 7.  The Court has watched the video of the interview and reviewed the transcript and finds that Bautista was asked that question and, in fact, gave that answer. Indeed, the video and the transcript of the video both contain this exact question. Dkt. No. 43-1, p. 84; Dkt. No. 75. Instead, Bautista stated that he decided to "enter a guilty plea based on Mr. Adobbati's representation of the contents of the interrogation video." Id., p. 102.

During the April 14, 2022, evidentiary hearing, Adobbati claimed that he was unable to show the video to Bautista prior to trial because the facility where Bautista was being housed did not permit electronics of any kind. Dkt. No. 77, p. 33. At that hearing, Adobbati noted that while Bautista had reviewed the transcript of the interview prior to trial, he had never seen the video until the day of trial. Id. Furthermore, Adobbati testified at the evidentiary hearing that when Bautista finally saw the video and saw his demeanor, that Bautista realized that the video would not be seen favorably by the jury and that a guilty plea was the best way to move forward. Id.

After reviewing the record and hearing testimony from Bautista and Adobbati at the evidentiary hearing, the Court finds Adobbati's versions of events to be much more credible. U.S. v. Scribner, 832 F.3d 252, 257-60 (5th Cir. 2016) (discussing the deference given to a magistrate judge who conducted an evidentiary hearing based on a habeas corpus claim and that judge's authority and discretion to make credibility findings based upon hearing and observing witness testimony).

As an initial matter, the Court has reviewed the transcript of the interview and watched the interview. Bautista was directly asked "So, this is the first time that you ever tried to have sex with a 13-year-old?," to which he replied, "absolutely." Dkt. No. 43-1, pp. 83-84. To the extent that Bautista does not remember this line of questioning, his memory is unreliable and unpersuasive. To the extent that Bautista is claiming that the Government faked the evidence in the interview, altering it to create a false question and answer, his claim is fantastical and unsupported by the record.

Adobbati testified that he was able to show Bautista the interview video during the recess at trial and had identified portions of the video that he wanted to show Bautista so that they could quickly discuss them during the time they had. Dkt. No. 77, pp. 55-56. Bautista testified that he never saw the video, that Adobbati could not get the video to work, so he had to rely on Adobbati's representations of what happened on the video. Id., pp. 102-08. After listening to Adobbati's and Bautista's testimony, the Court finds Adobbati's testimony to be more credible on this issue.

Specifically, the Court finds that Adobbati was able to show Bautista the video of the interview during a recess at trial and that the contents of the video caused Bautista to decide to plead guilty.  Given that Bautista was able to review the contents of the video before making his decision, Adobbati gave him competent representation. U.S. v. Cavitt, 550 F.3d 430, 440 (5th Cir. 2008) (a lawyer must provide his client with "an understanding of the law in relation to the facts") (citing Herring v. Estelle, 491 F.2d 125, 128 (5th Cir. 1974)).

Furthermore, "[a]s long as a defendant is advised of and understands the consequences of his plea, the plea is knowing and voluntary." U.S. v. Bonilla-Romero, 984 F.3d 414, 420 (5th Cir. 2020); see also Hobbs v. Blackburn, 752 F.2d 1079, 1081 (5th Cir. 1985) ("On federal habeas review, a guilty plea which was voluntarily entered by a defendant who understood the nature of the charges and consequences of the plea will pass constitutional muster.").  When Bautista pled guilty – on two separate occasions – he was informed that he faced a mandatory minimum sentence of 10 years of imprisonment and five years of supervised release with a maximum sentence of life imprisonment and a lifetime term of supervised release. CR Dkt. No. 50, pp. 7-8; CR Dkt. No. 166, p. 164.

Moreover, the Court ensured that Bautista was aware of the nature of the charges against him. See U.S. v. Gibson, 709 Fed. App'x 271, 273 (5th Cir. 2017) (noting that there is no "mechanical rule" about how a defendant must be apprised of the nature of the charges, but the Court must "have a colloquy with the defendant that would lead a reasonable person to believe that the defendant understood the nature of the charge"). Count one of the indictment was read to Bautista and he confirmed that he understood that charge. CR Dkt. No. 166, p. 175.  Bautista also stated that he understood the factual summary proffered by the Government and that the facts contained within it were true. Id., pp. 176-179.

Accordingly, the Court finds that Bautista knowingly and voluntarily pled guilty after receiving competent advice and representation from Adobbati.  This claim of ineffective assistance of counsel should be denied.

### B. Ineffective Assistance

Bautista asserts that Cisneros and Adobbati provided ineffective assistance of counsel in several respects.  The Court must first consider whether Bautista waived these claims.

#### 1. Waiver

Normally, a "voluntary and unconditional guilty plea waives all non-jurisdictional defects antecedent to the plea." <u>U.S. v. Scruggs</u>, 691 F.3d 660, 670 (5th Cir. 2012).  Because Bautista "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>U.S. v. Palacios</u>, 928 F.3d 450, 455 (5th Cir. 2019) (quoting <u>U.S. v. Smallwood</u>, 920 F.2d 1231, 1240 (5th Cir. 1991)).  This means that the guilty plea waives all claims of ineffective assistance that occurred before the guilty plea, "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." <u>Palacios</u>, 928 F.3d at 455.  Under this line of reasoning, Bautista has waived all claims made against Cisneros and any claims against Adobbati which predated the guilty plea.

However, Bautista expressly reserved within the plea agreement the right to file a § 2255 petition raising ineffective assistance of counsel claims. CR Dkt. No. 112, p. 3.  Thus, he appears to have reserved the right to unconditionally raise the issue of ineffective assistance within these proceedings. <u>U.S. v. Rivera</u>, 189 F.3d 470 (5th Cir. 1999).  As such, the Court will assume, without deciding, that Bautista can raise any and all claims of ineffective assistance, regardless of whether the ineffective assistance predates the second guilty plea.  Even with the benefit of this assumption, none of the claims stand up to scrutiny.

#### 2. Cisneros

Bautista alleges that Cisneros was ineffective for: (1) waiving "critical stages" of the Court proceedings; (2) failing to challenge the probable cause of the indictment; (3) failing to challenge the indictment for insufficient evidence; and (4) advising Bautista to

plead guilty when the Government could not prove all of the elements of the offense.  None of these claims are meritorious.

Bautista argues that Cisneros was ineffective for advising him to waive his right to a preliminary examination hearing and waive his right to a speedy trial.  Bautista was not prejudiced by counsel's advice.  The complaint in this case stated that Bautista was arrested after sending messages of a sexual nature to people that he believed to be a mother and a 13-year old female child, arranging to meet the child to engage in sexual intercourse. CR Dkt. No. 1.  The complaint laid out facts which gave probable cause to believe that Bautista had violated 18 U.S.C. § 2422(b).  Any challenge to the probable cause in this case at the preliminary examination hearing would have failed. See Koch v. Puckett, 907 F.2d 524, 527 (5th Cir.1990) ("counsel is not required to make futile motions or objections."). Furthermore, Bautista has not shown how he was prejudiced by waiving his right to a speedy trial.  This claim should be denied.

Bautista's claim that Cisneros failed to challenge the indictment, either for its probable cause or the sufficiency of the evidence, is frivolous.  As previously discussed, there was probable cause for Bautista to be arrested.  Furthermore, it is well established that there is no method to have an indictment dismissed prior to trial on the grounds that there is insufficient evidence to support it. U.S. v. Mann, 517 F.2d 259, 267 (5th Cir. 1975) ("A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.").  Thus, Bautista seeks to hold Cisneros ineffective for failing to file a motion that is not permitted in Federal court. See Koch, 907 F.2d at 527 ("counsel is not required to make futile motions or objections.").   This claim should be denied.

Bautista argues that Cisneros was ineffective for advising him to plead guilty. Bautista was not prejudiced by this advice because he was permitted to withdraw the guilty plea.  He was given a full opportunity to proceed to trial.  Indeed, no mention was made in

during the trial that Bautista had earlier pled guilty to these charges. CR Dkt. Nos. 109, 166. This claim should be denied.

### 3. Adobbati

Bautista argues that Adobbati was ineffective for: (1) failing to conduct a thorough review of the evidence prior to filing the motion to withdraw the guilty plea; (2) failing to meaningfully investigate the underlying facts; (3) failing to challenge the indictment for insufficient evidence; (4) failing to meaningfully advocate for him at sentencing; and (5) filing to file a requested notice of appeal.  None of these claims are meritorious.

#### a. Review of the Evidence

As to the first claim, Bautista's argument is difficult to follow.  He appears to be arguing that had Adobbati done a better job of reviewing the evidence after the withdrawal of the first guilty plea, then Bautista would have been in a better position to negotiate a more favorable plea agreement as part of the second plea.  This claim is contradicted by the record.  Bautista was given the statutory mandatory minimum sentence in terms of imprisonment.  While he was given more than the statutory minimum sentence in terms of supervised release, he has put forth no facts to show that further research by Adobbati would have resulted in a shorter supervised release period.  Thus, Bautista was not prejudiced by any alleged failures.  This claim should be denied.

#### b. Investigation

As to the claim that Adobbati should have conducted further investigation, the Court finds that Adobbati's actions did not constitute ineffective assistance of counsel.  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." Cox v. Stephens, 602 Fed. App'x 141, 146 (5th Cir. 2015) (unpubl.) (quoting Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993)).  Bautista alleges that if Adobbati had accessed his email account or independently subpoenaed records from Craigslist or KIK, he would have found (1) that the Craigslist ad that he responded to was different than the one put forward by the Government; (2) that he never received or opened the email

17

which mentioned the age of the fictional daughter; and (3) that the Government deceptively edited the KIK chat log.

Adobbati testified, in the April 2022 hearing that he did not subpoena any email records because he thought that there a good chance that the records would backfire. Because of the limine order, which prohibited either side from introducing expert testimony that Bautista read or opened the email which discussed the age of the fictional daughter, Adobbati knew that the Government could not directly prove that Bautista knew her age. Dkt. No. 77, p. 70. If he moved for a subpoena of the email records and the records showed "the email had been opened and then marked as unread or closed or whatever you would use in that terminology," Adobbati believed such a finding "would be detrimental to us." Id., pp. 70-71. Indeed, if Adobbati tried to subpoena such records, it is likely that the records would need to be disclosed to the Government. FED. R. CRIM. P. 17(c)(1). This is why Adobbati urged Bautista that the lack of discovery "was actually to our advantage," because the Government was forced to rely on circumstantial evidence to prove that Bautista knew that the fictional girl was under 18. Dkt. No. 77, p. 71.

In reviewing Adobbati's decisions, the Court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005) (internal quotation marks omitted). From Adobbati's perspective, the age element was the weakest part of the Government's case because "there was not completely obvious evidence that he was aware of the child's age." Dkt. No. 77, p. 29. Thus, that was the focus and thrust of the defense. Id., p. 30.

According to Adobbati, he did not do further investigation because if that investigation raised contrary evidence – for example, that Bautista had read the email and then marked it as unread – it would actually make the case for the Government. Id., pp. 70-71. This was a reasonable strategic decision. See Bueno v. U.S., 2017 WL 193495, at *7 (E.D. Va. Jan. 17, 2017) (counsel was not ineffective for an insufficient investigation when "further investigation was more likely to uncover additional inculpatory evidence than any exculpatory evidence at all"). The Court will not second guess counsel's reasonable

tactical decisions; to do so "would constitute Monday-morning quarterbacking on a Thursday." Molina-Uribe, 429 F.3d at 520.

As to the claims that Adobbati failed to investigate the altered chat logs and altered Craigslist advertisement, a defendant "has no right to an attorney who will docilely do as he is told." U.S. v. Moore, 706 F.2d 538, 540 (5th Cir. 1983). Adobbati testified that he trusted the Government's representations of the evidence. Dkt. No. 77, p. 66. To believe Bautista's contentions would require a belief that the Government fabricated evidence to trap Bautista into a conviction. "To render effective assistance of counsel, attorneys need not investigate incredible versions of what happened." Cutrer v. Cockrell, 2002 WL 1398558, at *13 (N.D. Tex. June 26, 2002), abrogated on other grounds by Caldwell v. Dretke, 429 F.3d 521 (5th Cir. 2005). Adobbati was not ineffective for failing to pursue this line of inquiry.

### c. Failure to Challenge the Indictment

As to the claim that Adobbati rendered ineffective assistance by failing to challenge the indictment on the basis of insufficient evidence, this claim is frivolous. As previously noted, there is no method to challenge the sufficiency of the evidence prior to trial. Mann, 517 F.2d at 267. Thus, Bautista seeks to hold Adobbati ineffective for failing to file a motion that is not permitted in Federal court. See Koch, 907 F.2d at 527 ("counsel is not required to make futile motions or objections."). This claim should be denied.

### d. Sentencing

As to the claim that Adobbati rendered ineffective assistance at sentencing, this claim is not supported by the record. Bautista claims that if Adobbati had presented "mitigating character evidence at sentencing," then he would have likely received only a 5 year term of supervised release. Dkt. No. 2, p. 32. This claim is not supported by the record. Indeed, the Sentencing Guidelines recommend a life term of supervised release for cases involving a sex offense, like the instant one. U.S.S.G. § 5D1.2(b). Thus, Bautista received less than the recommended supervised release term. He has not shown that he was prejudiced by Adobbati's performance. This claim should be denied.

### e. Failure to File Direct Appeal

Bautista asserts that Adobbati was ineffective because he failed to file a requested notice of appeal. Bautista has failed to prove this claim by a preponderance of the evidence, for which reason it should be denied.

In Bautista's version of events, he told Adobbati after sentencing that he wished to appeal the 10 year term of supervised release. He claims that Adobbati gave him a form to sign and date, which he did. At that point, he heard nothing further about his appeal.

In Adobbati's testimony at the evidentiary hearing, he said that Bautista knew that he was facing a mandatory minimum sentence and Bautista told Adobbati that he had no desire to appeal. Adobbati produced a written waiver of appellate rights form and Bautista checked that he did not wish to file an appeal, signed, and dated it. The form was entered into evidence. While Bautista claims that Adobbati checked the box that he did not wish to appeal, Adobbati asserted that was incorrect because that was not how he writes his checkmarks.

Having observed the testimony of both Bautista and Adobbati, the Court concludes that Adobbati is the more credible of the two. Adobbati was an experienced criminal defense attorney; he had previously filed notices of appeal on behalf of clients and would have had no trouble doing so in this case. The Court does not find Bautista's contention that Adobbati forged the checkmark to be credible; as Adobbati noted, the mark on the form is not how he writes a checkmark. In sum, the Court finds Adobbati's testimony credible that Bautista never asked him to file a notice of appeal.

This conclusion is buttressed by the fact that there is no evidence that Bautista ever contacted Adobbati asking about the status of any appeal or demanding to know why no appeal was filed. There is no explanation given for why Bautista would not ask about such an important issue.

Furthermore, even if the Court considers Bautista and Adobbati to be equally credible, Bautista's claim still fails. Bautista must demonstrate by a preponderance of the evidence that he instructed Adobbati to file a notice of appeal. If the accounts are equally credible, then Bautista loses. See Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 137

n. 9 (1997) (under the preponderance standard, "when the evidence is equally balanced," the party who has the burden of persuasion "must lose.").

This claim is not supported by the evidence and should be denied.

### C. Government Misconduct

Bautista alleges that the Government committed misconduct by: (1) not turning over to Cisneros the original Craigslist advertisement and emails between Bautista and the agents; (2) not informing the Court, at the hearing to withdraw the guilty plea, that the age of the victim was discussed in the interview; (3) the Government prevented Bautista's family from accessing his email account, preventing them from finding exculpatory evidence; and (4) the Government doctored the interview video to include discussions that did not actually occur during the interview. None of these claims stand up to scrutiny.

As an initial matter, Bautista's guilty plea waived all of these issues. Scruggs, 691 F.3d at 670. Indeed, a knowing and voluntary guilty plea waives any claim to evidence held by the Government; the right to such evidence is a trial right, not a pretrial right. Alvarez v. City of Brownsville, 904 F.3d 382, 394 (5th Cir. 2018) (en banc). To whatever extent the Government withheld probative evidence – and there is no evidence in the record that it did, besides Bautista's fantastical claims – Bautista waived his right to that evidence when he pled guilty.

Furthermore, Bautista's first two claims revolve around the Government not turning over or discussing evidence in the time surrounding the withdrawal of his first guilty plea. He does not allege that the Government failed to turn over the evidence prior to trial. Nor does he allege that the Government failed to turn over the evidence prior to his entering into the second guilty plea. Accordingly, he was not prejudiced by any failure.

As to the claim that the Government prevented his family from accessing his email account, there is no evidence in the record to support this contention. Mere conclusory allegations do not raise a constitutional issue. Brown v. Tarrant Cnty., 985 F.3d 489, 494 (5th Cir. 2021).

Finally, as to the claim that the Government doctored the interview video, this claim is fantastical. The Court has reviewed the transcript of the interview as well as the video

recording and finds no basis to conclude that the interview was altered in any form or fashion.  This claim should be denied.

### D. Insufficient Evidence

Bautista claims that the evidence was insufficient to support his conviction.  This claim is meritless.

At the risk of repetition, it has long been established that by pleading guilty, Bautista waived his right to challenge the sufficiency of the evidence. U.S. v. Silva, 136 F.3d 136 (5th Cir. 1998) (citing U.S. v. Broome, 628 F.2d 403, 405 (5th Cir. 1980) & Kelley v. Alabama, 636 F.2d 1082, 1083-84 (5th Cir. 1981)).  Because Bautista pled guilty and admitted to a factual basis that supported a finding of guilty, the Government's evidence was not fully revealed and put to the test.  Thus, the Court cannot accurately determine the sufficiency of the evidence.

But even with the evidence known to the Court, there is sufficient circumstantial evidence for a reasonable juror to conclude that Bautista knew the age of the fictional child.

When agents interviewed Bautista after his arrest, they repeatedly referred to "Lilly" as a 13-year old girl. Dkt. Nos. 43-1, 43-2. Initially, Bautista denied knowing whether Lilly was 13. Dkt. No. 43-1, p. 50. However, toward the end of the interview, the agent states that for the previous two weeks, Bautista had been having conversations with a "13- year-old girl named Lilly;" and that her mother texted about the possibility of Bautista having a sexual encounter with Lilly; that Bautista purchased condoms and personal lubricant prior to meeting them at Olive Garden; and they there was the possibility that Bautista, the mother, and Lilly would have traveled to a local hotel together; and Bautista would have had sex with Lilly in the hotel room. Dkt. No. 43-2, pp. 59-61. The agent asked Bautista if that was accurate and Bautista replied, "That is accurate." Id., p. 61. At that point in the interview, Bautista did not deny Lilly's alleged age.  The jury could also come to its own conclusion as to whether Bautista read the email by his KIK messages to the fictional mother and daughter.  There was sufficient circumstantial evidence to support a conviction. This claim should be denied.

## IV.  Recommendation

It is recommended that the Petitioner Juan Carlos Bautista's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be denied as meritless.

### A.  Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a),(c)(1).  A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006).  A district court may sua sponte rule on a COA, because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Bautista's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Bautista's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Accordingly, it is recommended that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on July 19, 2022.

_____
Ronald G. Morgan
United States Magistrate Judge